**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LISA A. COLE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | )     **Civ. 14-299** |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social** | ) |
| **Security,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION

### I. Introduction

This case is before us on appeal from a final decision by the defendant, Commissioner of

Social Security ("the Commissioner"), denying Lisa A. Cole's claim for disability insurance

benefits under Title II of the Social Security Act. The parties have submitted cross-motions for

summary judgment. For the reasons stated below, we will grant Plaintiff's motion for summary

judgment, deny Defendant's motion, and remand to the Commissioner for an award of benefits.

### II. Procedural History

Lisa A. Cole applied for Disability Insurance Benefits, under Title II of the Social

Security Act, 42 U.S.C. §§ 401-433, on March 2, 2011, alleging a disability due to Postural

Orthostatic Tachycardia Syndrome ("POTS") and related symptoms it causes such as

lightheadedness, fainting, debilitating headaches, unrelenting fatigue, extreme diaphoresis, joint

and muscle pain, and gastrointestinal disturbances, with an alleged onset date of March 8, 2010.

Plaintiff's claim was initially denied on July 14, 2011. A timely request for a hearing was filed

by Plaintiff on August 9, 2011. A hearing was held before an Administrative Law Judge

("ALJ") on February 3, 2012, at which Plaintiff was represented by counsel and testified.  R. at 31-73.  A vocational expert also testified at the hearing.

By decision dated September 27, 2012, the ALJ determined that Plaintiff is not disabled under §§ 216(i) and 223(d) of the Social Security Act.  R. at 17-27.  The ALJ found that Plaintiff has the following severe impairments: postural orthostatic tachycardia syndrome (POTS), orthostasis and orthostatic intolerance; cardiac dysrhythmias; cervical radiculopathy; degenerative disc disease; obesity; depression; PTSD; and anxiety.  R. 19.  The ALJ also determined that none of the impairments or combination of impairments meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 19-21.

The ALJ determined that Plaintiff has the residual functional capacity to perform sedentary work, except that the she is required to have a sit/stand option allowing her to change position for one to two minutes every 30 minutes without going off-task; it must entail only occasional postural movements except no crawling or climbing of ladders, ropes, or scaffolds; it must entail no exposure to extreme heat, cold, wetness, humidity, vibration, or hazards such as unprotected heights and moving mechanical parts; it must entail no driving; it must be limited to simple, routine, repetitive tasks; it must entail no production rate pace, but can perform goal oriented work; and must entail no more than occasional interaction with supervisors and coworkers and no interaction with the public.  R. 21-26.

In making this determination the ALJ made the following credibility determination:

… the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

R. 23.  In the course of his Opinion, the ALJ further explained that "the claimant's allegations are so extreme as to appear somewhat implausible, and her treatment records simply do not buttress her allegations."  R. 24.  He found that the "claimant's credibility is, at best, fair."  R. 25.

Considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ concluded that she is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and therefore she is "not disabled."  R. 27.

Plaintiff filed a timely review of the ALJ's determination, which was denied by the Appeals Council on January 30, 2014.  R. 1-6.  Having exhausted her administrative remedies, Plaintiff filed the instant action seeking judicial review of the final decision of the Commissioner of Social Security denying her application.

## III.  Standard of Review

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits.  See 42 U.S.C. § 405(g)(2012).  This court must determine whether or not there is substantial evidence which supports the findings of the Commissioner. See id.  "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'"  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971).  This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla."  Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002).  This standard, however, does not permit the court to substitute its own conclusions for that of the fact-finder.  See id.; Fargnoli v. Massonari, 247

F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry). So long as the ALJ's decision is supported by substantial evidence and decided according to the correct legal standards, the decision will not be reversed. Id. To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. 5 U.S.C. § 706(1)(F)(2012).

## IV. Discussion

Under the SSA, the term "disability" is defined as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months ...

42 U.S.C. § 423. A person is unable to engage in substantial activity when he:

> is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....

42 U.S.C. §§ 423(d)(1)(A), (d)(2)(A).

In determining whether a claimant is disabled under the SSA, a sequential evaluation process must be applied. 20 C.F.R. § 416.920(a). See McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3d Cir. 2004). The evaluation process proceeds as follows. At step one, the Commissioner must determine whether the claimant is engaged in substantial gainful activity for the relevant time periods; if not, the process proceeds to step two. 20 C.F.R. 20 C.F.R. § 416.920(b). At step two, the Commissioner must determine whether the claimant has a severe impairment or a combination of impairments that is severe. 20 C.F.R. § 416.920(c). If

the Commissioner determines that the claimant has a severe impairment, he must then determine whether that impairment meets or equals the criteria of an impairment listed in 20 C.F.R., part 404, Subpart P, Appendix. 1.  20 C.F.R. § 416.920(d).

The ALJ must also determine the claimant's residual functional capacity; that is, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  20 C.F.R. § 416.920(e).   If the claimant does not have an impairment which meets or equals the criteria, at step four the Commissioner must determine whether the claimant's impairment or impairments prevent him from performing his past relevant work.  20 C.F.R. § 416.920(f).  If so, the Commissioner must determine, at step five, whether the claimant can perform other work which exists in the national economy, considering his residual functional capacity and age, education and work experience. 20 C.F.R. § 416.920(g).  See also McCrea, 370 F.3d at 360; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000).

Plaintiff argues that the ALJ erred in not evaluating all the medical evidence; erred in not giving controlling weight to the expert medical opinions of her treating physician, Ezra M. Kahn, M.D.; erred in relying on the opinions of a non-examining source; and erred in his credibility determination.

Specifically, Plaintiff argues that there is no evidence in Dr. Kahn's records to establish that the Plaintiff was exaggerating her symptoms and therefore no support for the ALJ's decision to give only "little weight" to Dr. Kahn's opinions.  Moreover, Plaintiff points to a medical report submitted by Barry L. Alpert, M.D., supporting Plaintiff's position as to her symptoms and degree of disability.  Plaintiff also argues that the ALJ erred in focusing his opinion on whether Plaintiff was disabled as a result of her mental condition and her disorder of the spine,

instead of focusing on Plaintiff's claim that she was disabled due to her POTS diagnosis, and the related disabling symptoms she suffered. Therefore, Plaintiff argues that the ALJ failed to consider all of the evidence when arriving at his credibility determination.

In response to Plaintiff's arguments, Defendant first argues that because the ALJ did not have any medical evidence from Dr. Alpert, such evidence cannot be used to attack the ALJ's opinion and we are unable to consider it as a matter of law. Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001). Defendant also argues that the ALJ properly considered the opinions of Dr. Kahn, and properly rendered his credibility determination. Finally, Defendant argues that substantial evidence supports the ALJ's conclusion that Plaintiff has the residual functional capacity to perform sedentary work, with certain limitations.

We agree with Defendant that the medical evidence submitted by Dr. Alpert cannot be considered by this Court as it was never considered by the ALJ. Dr. Alpert prepared medical evidence dated September 18, 2012, and November 29, 2012. R. 345-346 & 348-349. The ALJ issued his opinion on September 27, 2012. Both reports were submitted to the Appeals Council. Plaintiff could have, but did not, submit the first of Dr. Alpert's reports to the ALJ before he issued his decision. The second report was issued after the decision and to the extent Dr. Alpert's evidence concerns Plaintiff's condition in the time period after the ALJ issued his decision, it is not relevant to our review of the ALJ's decision.

It is understandable why counsel points to Dr. Alpert's reports in her brief as Dr. Alpert's evidence appears to indicate that Plaintiff may in fact be disabled due to POTS. Specifically, Dr. Alpert states in his November 29, 2012 report that Plaintiff "continues to be miserable and completely debilitated by her POTS syndrome." R. 348. He continues, stating:

> Her major complaint continues to be lightheadedness and dizziness when she
> stands, as well as an increase in her headaches. Her blood pressure can be as low
> as 89 systolic up to 140 systolic. She essentially is bedridden from her condition
> and very depressed by it.

R. 348. He concludes: "I have never seen anybody so debilitated by her POTS syndrome." R.

348.

Dr. Alpert's report supports Ms. Cole's own testimony and evidence of how she has been

affected by her condition. However, as we have stated, none of this evidence was presented to

the ALJ, and we cannot review the ALJ's decision based on evidence that was never submitted

to him. As Defendant stated, in light of Dr. Alpert's medical evidence indicating that Plaintiff is

disabled, the remedy is for her to file a new application for benefits.

We turn now to a consideration of the ALJ's assessment of the medical evidence.

Plaintiff argues that the ALJ erred in not giving controlling weight to her treating source's

opinion, and erred in relying on the non-examining source's opinion. She further argues that the

ALJ erred in not fairly considering her diagnosis of POTS as the primary cause of her alleged

disability. In general, Plaintiff also argues that the ALJ failed to consider all of the evidence

when arriving at his credibility determination, specifically noting that there is no evidence in her

treating source's records indicating that she was exaggerating her symptoms.

This is a difficult case as it apparent that the ALJ's opinion is thorough and attempts to

consider all the evidence in a comprehensive manner in arriving at this ultimate determination.

However, a careful review of the medical evidence in comparison to the ALJ's consideration of

the evidence reveals that the Plaintiff's medical evidence supports her treating doctor's opinion.

## A. Evaluation of the Medical Evidence

As the finder of fact, the ALJ is required to review, properly consider and weigh all of the medical records provided concerning the claimant's claims of disability. Fargnoli, 247 F.3d at 42, citing Dobrowolsky v. Califano, 606 F.2d 403, 406-07 (3d Cir.1979). "In doing so, an ALJ may not make speculative inferences from medical reports." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999), citing Smith v. Califano, 637 F.2d 968, 972 (3d Cir.1981). "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir.2000), quoting Plummer, 186 F.3d at 429 (citations omitted). While an ALJ may reject a treating physician's assessment, he may do so "'outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." Id., quoting Plummer, 186 F.3d at 429 (citations omitted); 42 U.S.C.A. § 423(d)(1)(A). Indeed, the ALJ may not substitute his own opinions for the opinions of an examining physician. Plummer, 186 F.3d at 422, citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir.1985).

When the medical evidence provided by a treating physician or physician conflicts with other medical evidence of record "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Id., citing Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993). Moreover, The ALJ must consider all the evidence and give some reason for discounting the evidence he rejects. Stewart v. Secretary of H.E.W., 714 F.2d 287, 290 (3d Cir. 1983); 42 U.S.C.A. § 423(d)(1)(A). Finally, "[i]f a treating physician's opinion is rejected,

the ALJ must consider such factors as the length of the treatment relationship, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record evidence, any specialization of the opining physician and other factors the plaintiff raises, in determining how to weigh the physician's opinion." Sanchez v. Barnhart, 388 F.Supp. 2d 405, 412 (D.Del.2005), citing 20 C.F.R. § 404.1527(d)(2)-(6).

> Under applicable regulations and the law of this Court, opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight. *See* 20 C.F.R. § 404.1527(d)(2); Cotter, 642 F.2d at 704. The regulations explain that more weight is given to a claimant's treating physician because
>
>> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.
>
> 20 C.F.R. § 404.1527(d)(2). Where a treating source's opinion on the nature and severity of a claimant's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," it will be given "controlling weight." Id.

Fargnoli, 247 F.3d at 43. The Commissioner will apply the following factors in determining the weight to be given to a treating physician: (1) the length of treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) whether the diagnosis is supported by the source's findings; (4) whether the diagnosis is consistent with the record as a whole; (5) whether the source is a specialist in any given area; and (6) any other reason to give a particular source weight in determining disability. 20 C.F.R. § 404.1527(d).

### 1. Dr. Khan's Medical Evidence

Our review of the ALJ's assessment of Dr. Khan's medical evidence shows that he failed to properly consider all of Dr. Khan's evidence and failed to adequately explain his conclusions in light of conflicting evidence. Because Plaintiff's alleged disability is her POTS, her primary medical evidence consists of treatment notes from Ezra M. Kahn, M.D., the doctor who first diagnosed her and treated her on a continuing basis for nearly two years, from January 28, 2010, through May 21, 2012. Dr. Khan also completed two different Medial Source Statements of Claimant's Ability to Perform Work-Related Activities: the first is dated July 11, 2011 (R. 224-225), and the second is dated May 31, 2012 (R. 291-297). However, the ALJ highlighted only a selected portion of Dr. Khan's medical records, misstated or ignored statements in treatment notes, and placed undue emphasis on Dr. Khan's indications of when Plaintiff was doing better.

The ALJ refers to Plaintiff's initial visit with Dr. Khan in January 2010, noting that this was when she was first diagnosed with POTS. R. 23. The ALJ acknowledged that she reported significant symptoms, but in contrast he noted that "she reported a *significant improvement* in her symptoms with increasing her salt and water intake." R. 23 (emphasis added). In fact, the treatment note is less positive. It actually states that the Plaintiff "noticed that since she increased her salt and water intake over the last couple of months she is feeling *somewhat better*." R. 239 (emphasis added). Thus, Dr. Khan noted that increasing salt and water led to her feeling "somewhat better," not "significantly," and he did not mention that any specific symptom improved.

The ALJ does not mention at all the next two treatment notes dated February 5, 2010, and February 28, 2010. R. 237-238 & 235-236. These treatment notes are significant in showing

Plaintiff's severe symptoms in the early part of her treatment.  Reviewing all of the medical evidence from a treating source over time is necessary in order to properly assess subsequent notes as treatment continues.

The February 5, 2010 treatment note indicates as follows:

> She is having severe symptoms of POTS with a severe headache, especially standing up. She has total orthostatic intolerance. She is almost chair-bound at this point and appears to not be able to carry out any activities.  Since her last visit, she is reporting that her *symptoms are somewhat improved*, especially the headaches are not as disabling. . . .

R. 237 (emphasis added).  In the "Plan" section of the notes, Dr. Khan states that Plaintiff is an "unfortunate female with severe symptoms of POTS.  She *had some improvement in her symptoms* since her last visit with increased Florinef."  R. 238 (emphasis added).

We highlighted Dr. Khan's indication that Plaintiff's symptoms are improved, even though he also states that she has severe symptoms of POTS and "is almost chair-bound" and "appears to not be able to carry out any activities."  R. 237.  In other words, Dr. Khan notes that Plaintiff's severe symptoms are "somewhat improved" but clearly not to the point of allowing her to carry out any activities.   It is important to review all of a treating source's notes in order to gain a context for what a particular doctor means when he uses certain phrases.  Here, at the her second visit, Dr. Khan is comfortable noting improvement while at the same time documenting an inability to undertake activity.

Similarly, Dr. Khan notes in his February 28, 2010 notes as follows:

> The patient is here for follow[-]up of POTS. She continues to have symptoms of dizziness, severe headaches and intolerance to upright posture.  Most of the time she stays in bed or on a chair. She is getting really frustrated by her condition. She is concerned whether she will ever be able to go back to her baseline.  . . .

R. 235. Dr. Khan also stated in his "Plan" that "[f]rom a work point of view, I think she is disabled to do any kind of meaningful work. Hopefully, in the future with her treatment she may get better, and one day may be able to go back to work." R. 236. Despite these clear statements regarding the Plaintiff's inability to do work, Dr. Khan also stated that Plaintiff "is slowly and gradually getting better," but she is "not to the point where she can do any activities." R. 236."

As noted, the ALJ did not mention either of the February 2010 treatment notes in his assessment of Dr. Khan's medical evidence. Instead, the ALJ jumped ahead to the June 8, 2010 note, in which it is noted that since the last visit Plaintiff "has been feeling much better. She reports that her headaches are well controlled and her palpitations are also under control. She reports that she has occasional days where she is not feeling so well. She in fact is feeling well and wants to go back to part-time work." R. 233. Dr. Khan noted that Plaintiff had "responded well to medical therapy," "is feeling much better," and he opined that he thought "she can go back to work part time," but that she should "avoid prolonged standing." R. 234.

Based on this treatment note it appears that Plaintiff has improved, is feeling better, and will attempt to go back to work. Just after citing this note the ALJ states that "it is notable" that she alleges disability as of May 8, 2010, the month prior to the statements in the June medical note. Though not explicit, it is apparent that the ALJ is suggesting a lack of credibility on the part of Plaintiff in claiming disability so close in time to an indication of improvement.

As we have noted, to properly assess Plaintiff's symptoms over time it makes sense to include a review of all of the medical evidence. As noted, the ALJ did not mention the severe disabling symptoms reported by Dr. Khan in the prior two treatment notes, which balances the single, tentative positive treatment note of June.

It is also plausible that Plaintiff experienced improvement on June 8, 2010, but also properly set her disability onset date a month prior. Indeed, her very next treatment note, dated October 15, 2010, indicates that she "tried to go back to work part-time" but she could not do so. R. 232.

While the ALJ does refer to the October 15, 2010 treatment note, he only mentions that Plaintiff was reporting breakthrough headaches. R. 23. However, the ALJ does not mention at all the very next sentence in the treatment note, in which Dr. Khan explains that Plaintiff "tried to go back to work part-time; however, she could not do well secondary to her symptoms of headaches." R. 232. Dr. Khan also reports that Plaintiff is doing "relatively well" and "reasonably well" with her current medical regimen. R. 232. By reviewing the treatment notes in context as a whole it is clear that Dr. Khan's indication of the patient doing relatively well includes the fact that she tried to return to part-time work but was unable to work. It is difficult ot understand why the ALJ would not refer to the entirety of this treatment note.

Dr. Khan's remark that Plaintiff is doing "relatively well" continues in his February 9, 2011 treatment note when he states: "She is doing relatively well. We will continue current medical regimen." R. 230-231. Despite "doing well," Dr. Khan notes that Plaintiff "continues to notice increased heart rate, fatigue, headache, and diaphoresis with increased activity." R. 230. Dr. Khan also indicates that she "denies dizziness, lightheadedness or syncope." R. 230.

Dr. Khan's report that Plaintiff denied dizziness, lightheadedness or syncope on February 9, 2011, is described by the ALJ as contrary to her hearing testimony. R. 23. Had Plaintiff consistently denied these symptoms during her treatment with Dr. Khan then it would make sense to describe her hearing testimony as contrary. However, this is one instance on one day a

year before the hearing took place. The ALJ erred in using this one statement in the February 2010 treatment note as evidence undermining Plaintiff's credibility, and serves to support Plaintiff's argument that the ALJ erred in his overall credibility assessment.

Next, the ALJ states that Plaintiff "continued to treat with Dr. Khan, and it appears that her symptoms continued to improve." R. 24. Apparently, in support of this statement, the ALJ refers to Plaintiff reporting to Dr. Khan in September 2011 that she had daily headaches but indicated they were not as bad as they had been; and that in May 2012, it was noted that she was doing well on her medications. R. 24. However, Plaintiff was also treated by Dr. Khan on May 17, 2011, and on June 7, 2011. The ALJ does not refer to either of these intervening treatment notes.

Dr. Kahn's May 17, 2011 note indicates that Plaintiff "reports that she has continued episodes of racing sensation in her chest when she sits up. She is now having daily headaches. She tries to drink fluid with salt, however. This lessens her headache for approximately 20 minutes, and then her headache returns. She reports that she had nausea ….The patient is tearful throughout history and physical exam." R. 226. In his "Plan" section, Dr. Khan states as follows:

> She has noticed *worsening in her symptoms* with specifically continued racing sensation in her chest with sitting up. She also reports daily headaches which are not relieved with increased fluid and salt intake. I have asked her to start taking salt tablets for the next 3-4 days, and increase her fluid intake to see if this makes any difference in her symptoms.

R. 226. Thus, it was not accurate to state that her symptoms continued to improve as she continued to treat with Dr. Khan.

At the next visit, June 7, 2011, Plaintiff did report "that she is doing somewhat better. She continues to have headaches. They are not as bad." R. 308. This indication that she is doing better must be read in context of the prior visit in which she had reported worsening of symptoms. In fact, Dr. Kahn more precisely explained that "she is doing somewhat better *since the time of her last office visit.*" R. 305 (emphasis added).

### Medical Source Statement No. 1

Dr. Kahn then completed his first Medical Source Statement, dated July 11, 2011. R. 224-225. Dr. Kahn indicated that Plaintiff was limited to occasional lifting and carrying of 2 to 3 pounds. R. 224. He further indicated that she could stand and walk for 1 hour or less in an 8 hour day, and sit for 2 to 3 hours. R. 224. He found that she was limited in both her upper and lower extremity for pushing and pulling for operation of hand and/or foot controls, stating that it would be "difficult to perform due [to her] inability to stand." R. 224. Dr. Kahn indicated that Plaintiff was unable to perform any bending, kneeling, stooping, crouching, or climbing, and could only occasionally perform balancing; while also noting that she was subject to "pass out." R. 225. He also noted that Plaintiff's impairment would mean she would be affected by poor ventilation, heights, moving machinery, vibration, temperature extremes, and chemicals. R. 225.

On September 27, 2011, Dr. Kahn notes that Plaintiff "is doing somewhat better. She continues to have daily headaches, however, they are not as bad." R. 306. This is virtually identical to Dr. Kahn's June 7, 2011 treatment note in which he stated that Plaintiff "reports that she is doing somewhat better. She continues to have headaches. They are not as bad." R. 308. In September, she did note a significant decrease in her dizziness and that she had not had any syncopal episodes. R. 306. Again, Dr. Kahn concludes with his typical indication that Plaintiff is doing "somewhat better." R. 307.

Plaintiff again treats with Dr. Kahn on May 21, 2012. As noted, the only significant fact from this note in the ALJ's view was that it was reported that she was doing well on her medications. R. 24. Plaintiff's history is set forth in the May 21, 2012 note as follows:

> Patient with history of POTS, who is been doing well on current medications. *She recently noticed some worsening symptoms.* She is been doing IV NS infusion every other months with good results. She also use Flornif. She noticed the headach[e]s are better after IV fluid. Recently she noticed more of the glossitis. She is getting B12 shots with mild relief of symptoms.

R. 304 (emphasis added). Upon physical examination the note indicates that Plaintiff is "Lying flat, crying 'I can not live like this.'" R. 304. In the PLAN section of the treatment note it states:

> Patient with POTS for the last several years. She is been doing well over the past year or so. However, *the POTS is making it impossible for her to have a full time job*. She can stand intermittently, however, constant standing makes it worse. I think she has orthostatic intolerance.

R. 304 (emphasis added).

Dr. Kahn's report that Plaintiff had worsening symptoms and that her POTS is making it impossible for her to have a full time job is in direct conflict with the ALJ's statement that after her February 7, 2011 office visit "her symptoms continued to improve." R. 24. The ALJ fails to refer to the details in the May 2012 treatment note and makes no attempt to explain the fact that the notes are in conflict with the ALJ's conclusion that Plaintiff was doing well.

### *Medical Source Statement No. 2*

Shortly after the May 21, 2012 visit, Dr. Kahn completed a second Medical Source Statement dated May 31, 2012, indicating a diagnosis of Postural Orthostatic Tachycardia Syndrome. R. 291-297. In this Statement, Dr. Kahn indicated that "LIFTING/CARRYING" are affected by Plaintiff's impairment, and that she could occasionally lift or carry a maximum of 10 pounds, and frequently carry 1/3 of a pound. R. 294. Dr. Kahn indicated that the medical

findings supporting the limitations are orthostatic intolerance, with symptoms of dizziness, syncope, and headaches. R. 294. He further indicated that her orthostatic intolerance meant that Plaintiff was limited to standing or walking a total of one hour per day, and 10 minutes without interruption; she could sit for four hours in a day, and for one hour without interruption; and that she was able to climb, kneel, crouch, stoop, balance, and crawl for less than one minute. R. 295

Dr. Kahn also indicated that Plaintiff's physical functions of seeing, feeling, handling, speaking, reaching, hearing, and pushing/pulling are affected by her diagnosis and explained that she had an inability to tolerate or perform these functions due to blurred vision and slowed and slurred speech. R. 296. Similarly, he indicated that environmental conditions of fumes, chemicals, moving machinery, vibration, noise, heights, humidity, dust, temperature extremes exacerbates her symptoms of orthostatic intolerance. R. 296. He concluded his Statement by saying that "All activities work related affected due to orthostatic intolerance – dizziness, severe headaches, syncope." R. 297.

### 2. The Non-Examining Source's Opinion

A Medical Source Statement dated July 12, 2011, was prepared by a non-examining State Agency Consultant Nghia Van Tran, M.D. R. 74-84. Dr. Van Tran determined that Plaintiff could occasionally lift or carry 10 pounds and frequently lift or carry less than 10 pounds; that she could stand or walk for a total of 2 hours in a work day, she could sit for a total of 6 hours in a work day, and that she had no limitations on pushing or pulling (except as noted for the weight restriction of lifting and carrying). R. 79. Dr. Van Tran further indicated that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. R. 80. Dr. Van Tran found Plaintiff's statements of her limitation to be partially credible, and he

only partially credited Dr. Khan's opinion of Plaintiff's limitations as indicated in his July 11, 2011 Statement. R. 80-81. He explains that Dr. Khan's opinion "relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion," is "without substantial support from other evidence of record," and therefore he found the opinion to be "less persuasive." R. 81.

### 3. The ALJ's Review of the Medical Evidence

As noted, the ALJ gave "little weight" to Dr. Khan's opinions, explaining that "the limitations "are so extreme as to appear implausible." R. 25. In support of his assessment of Dr. Kahn's opinions, the ALJ refers to his review of Dr. Khan's treatment notes wherein the ALJ noted that Dr. Khan "often noted that the claimant's symptoms were improved." R. 25. The ALJ also points out that treatment notes from other medical sources failed to reveal significant symptoms. R. 25. Finally, he found that Dr. Khans' conclusions were "undermined" due to a lack of consistency between the July 11, 2011 Statement and the May 31, 2012 Statement. R. 25.

The ALJ fails to reconcile his assignment of little weight given to Dr. Khan's opinion with the longitudinal objective medical records from Dr. Khan from January 2010 through May 2012 that are in accord with Dr. Khan's opinion. This failure is not surprising given that the ALJ did not address all of Dr. Khan's treatment notes, overemphasized Dr. Khan's reports of the Plaintiff being "somewhat better," and misconstrued Plaintiff's report of feeling "somewhat better" as "a significant improvement" in her symptoms.

As we have set forth above, there were several indications in the treatment notes that did not indicate that Plaintiff was improving. For example, Dr. Khan noted that Plaintiff had

somewhat improved, but she was still not able to carry out activities (r. 237); she attempted to return to part-time work but could not because of her symptoms (r. 232); in May 2011 she had a worsening of symptoms (r. 226); and that her POTS is making it impossible for her to have a full time job (r. 304). The ALJ does not refer to any of this evidence nor does he satisfactorily explain why it should be ignored.

Plaintiff also argues that the ALJ erred in part because he failed to focus on her allegation that she was disabled due to Postural Orthostatic Tachycardia Syndrome and its symptoms, and instead chose to focus on her mental issue and her complaints about her spine, which were due in part to an automobile accident and subsequent surgery. We see no evidence that the ALJ ignored Plaintiff's allegation that she has POTS, and the ALJ tried to make it clear that he considered the effect Plaintiff's other, non-POTS impairments had on her abilities in order to ensure that he accounted for all of her limitations. We do, however, think that the ALJ over-relied on other medical evidence in support of his assessment of Dr. Khan's opinions.

One of the ALJ's justifications for giving "little weight" to Dr. Khan's opinions was that other medical evidence "failed to reveal significant symptoms." R. 25. Similarly, the government argues that the "records from other physicians of record during this period do not indicate or even suggest that Plaintiff was disabled by POTS." Gov. Br. 17. Our review of the other medical evidence shows that the other treating sources either did not mention the fact that Plaintiff had POTS, or did not include *any* assessment of the symptoms she experienced from POTS. This is not surprising as Plaintiff was seeing the other physicians for reasons unrelated to her POTS diagnosis.

In particular, the ALJ referred to treatment notes from Matt El-Kadi, M.D., Ph.D., FACS, in July 2010 and January 2011.  R. 24.  Plaintiff was referred to Dr. El-Kadi by her primary care physician, Sean M. Conley, M.D.  R. 211.  She presented to Dr. El-Kadi complaining of headache and cervical radiculopathy.  R. 216.  Dr. El-Kadi never mentions her POTS diagnosis or otherwise evaluated for this diagnosis.  See R. 211-216.

The ALJ's last justification for giving little weight to Dr. Khan's opinions is that he found that Dr. Khan submitted "contradictory medical source statements," that the ALJ saw as a "lack of consistency" that "undermines this source's conclusions."  R. 25.  The only inconsistency pointed out by the ALJ is that Dr. Khan indicated that Plaintiff was limited to lifting two to three pounds in his first statement, while in his second statement he increased the weight limitation to ten pounds.  R. 25.  The ALJ chastises Dr. Khan for failing to "explain how this improvement led to revisions in his medical source statements."  R. 25.  Were this a more significant difference and the change in limitation occurred closer in time, perhaps it would indicate that a closer look at Dr. Khan's opinion would be in order.  As it is, Dr. Khan completed the second Statement nearly a year after he completed his first one.  We cannot say that the change of weight limit is an inconsistency that supports assigning "little weight" to his opinion.

Finally, we note, as the ALJ also did, that Dr. Khan "possesses exceptional understanding of the claimant's clinical picture."  R. 25.  In according only "little weight" to Dr. Khan's opinions the ALJ rejected a treating physician's assessment, but we find that he erred in that he did not adequately point to contradictory medical evidence.  In addition, to the extent the ALJ based his rejection of Dr. Khan's opinions on his own credibility judgment or substituted his lay opinion for Dr. Khan's opinion it was error.

20

This leads us to the ALJ's consideration of the State agency consultant. The ALJ accorded "great weight" to Dr. Van Tran's opinion. R. 25. The ALJ explained that although Dr. Van Tran did not examine or treat Plaintiff, his report "clearly reflects a thorough review of the record and is supportable." R. 25. As we have discussed, the ALJ's review of Dr. Khan's medical evidence was not complete. The ALJ accorded "great weight" to a non-examining source finding that Dr. Van Tran's opinion reflects a thorough review of the records, but the ALJ's review of the same evidence, as well as additional evidence Dr. Van Tran did not review, was not thorough. Dr. Van Tran's report was issued on July 12, 2011, and therefore he was unable to consider any of Dr. Khan's subsequent treatment notes. The ALJ's decision to give "great weight" to this opinion was error.

It is apparent from our review of Dr. Khan's treatment notes that the ALJ ignored relevant information, and erred in not according "great weight" to Dr. Khan's medical records and his opinion. Dr. Khan's opinion "reflect[s] expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987); 20 C.F.R. § 404.1527(d)(2). Significantly, in his two and one-half years of continuous treatment Dr. Khan never expressed the belief that Plaintiff's POTS diagnosis were not causing her the debilitating symptoms and pain expressed by Plaintiff. Accordingly, we conclude that the ALJ erred in his evaluation of the medical evidence.

### B. Credibility Determination

Plaintiff argues that because the ALJ failed to adequately consider the medical evidence that the ALJ also erred in his consideration of Plaintiff's credibility. We agree and find that the ALJ erred in his credibility determination.

The Social Security Administration has set forth factors describing how allegations of subjective symptoms, such as pain, are to be evaluated. *See* 20 C.F.R. § 404.1529. Subsection (c), relating to the evaluation of intensity and persistence of pain, reads in pertinent part as follows:

> (1) General. When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work ....

> (2) Consideration of objective medical evidence. Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption .... However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.

> (3) Consideration of other evidence. Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. The information that you, your treating or examining physician or psychologist, or other persons provide about your pain or other symptoms ... is also an important indicator of the intensity and persistence of your symptoms.

20 C.F.R. § 404.1529(c).

The Court of Appeals for the Third Circuit has elaborated on these regulations. "Subjective complaints must be given 'serious consideration.'" Burns, 312 F.3d at 129, citing Mason, 994 F.2d at 1067; Green v. Schweiker, 749 F.2d 1066, 1068 (3d Cir.1984)). Such "serious consideration" is to be given "even when those complaints are not supported by objective evidence." Mason, 994 F.2d at 1067, citing Ferguson, 765 F.2d at 37. There need not be objective evidence of the pain itself, but there must be objective evidence of some condition

that could reasonably produce pain.  <u>Mason</u>, 994 F.2d at 1067, quoting <u>Green v. Schweiker</u>, 749 F.2d 1066, 1071 (3d Cir.1984).

When supported by objective medical evidence, a claimant's subjective complaints are entitled to "great weight." <u>Mason</u>, 994 F.2d at 1067; <u>Green</u>, 749 F.2d at 1068-71 (3d Cir.1984). A claimant's  subjective complaints of pain supported by competent evidence cannot be disregarded "unless there exists contrary medical evidence."  <u>Mason</u>,994 F.2d at 1067-1068.

Once an ALJ determines that a claimant has an impairment "'which is reasonably expected to produce some pain, they must consider all of the evidence relevant to the individual's allegations of pain, even if the alleged pain is more severe or persistent than would be expected.'" <u>Sykes v. Apfel</u>, 228 at 266 n.9, quoting <u>Evaluation of Symptoms, Including Pain</u>, 56 Fed.Reg. 57,932 (1991) (interpreting regulations regarding the evaluation of symptoms including pain, 20 C.F.R. § 404.1529)).  "Where the Secretary is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." <u>Sykes</u>, 228 F.3d at 266 n.9 (quotations and citations omitted).  Similarly, "[i]f the ALJ determines that the claimant's subjective testimony is not fully credible, the ALJ is obligated to explain why.   <u>Burns</u>, 312 F.3d at 129, quoting <u>Burnett v. Commissioner</u>, 220 F.3d 112, 120 (3d Cir.2000)).

In support of his credibility finding the ALJ in general relied on his assessment that Plaintiff's report of her limitations was not in accord with the medical evidence.  As we have discussed, because the ALJ erred in his review of the medical evidence we cannot say that his credibility determination is well-supported.

The ALJ supported his credibility determination more specifically as follows. First, as already discussed, he implied that Plaintiff was less than credible because she testified that she experienced dizziness, lightheadedness and syncope, but on February 9, 2011, she denied having these symptoms. R. 23. As we explained, this one occurrence of not having the above symptoms the year prior to the hearing, in contrast to consistent reports of these symptoms both before and after February 9, 2011, is insufficient evidence to undermine Plaintiff's credibility.

Next, the ALJ explicitly stated that the "fact that the claimant may have exaggerated her symptoms during her treatment" with Dr. El-Kadi undermines her credibility. R. 24. Dr. El-Kadi saw Plaintiff twice, and at the second visit he noted that he "felt some exaggeration of her pain symptoms upon examination." R. 216. The government also relies heavily on this statement from Dr. El-Kadi. Gov. Br 17 & 18. This is weak evidence to undermine Plaintiff's credibility for two reasons. First, Dr. El-Kadi had extremely limited contact with Plaintiff seeing her on only two occasions, six months apart. In addition, Dr. El-Kadi was treating Plaintiff for spine-related back pain, not POTS, and thus his impression that he felt she was exaggerating her pain symptoms is not persuasive evidence undermining Plaintiff's credibility.

Finally, we agree with Plaintiff that with regard to the ALJ's credibility determination it is unclear if the ALJ was considering her reported limitations as a result of her POTS diagnosis or solely based on a review of her mental complaints and back pain complaints. The ALJ found that her "allegations are so extreme as to appear somewhat implausible, and her treatment records simply do not buttress her allegations." R. 24. The ALJ then specifically refers to POTS and explains that "the record reflects that she received significant treatment, but she consistently reported improvement in symptoms from one visit to the next." R. 24. To the extent the ALJ

relies on the above assessment of Dr. Khan's treatment notes to undermine Plaintiff's credibility we have found the ALJ's assessment of the evidence to be less than complete.

After this initial referral to the diagnosis of POTS, the remainder of the ALJ's lengthy paragraph addressing his credibility determination concerns Plaintiff's musculoskeletal complaints and her mental complaints. R. 24-25. When the ALJ arrives at his conclusion that Plaintiff's credibility is "fair" he states that "it is difficult to attribute [claimant's] degree of limitation to the claimant's medical condition, as opposed to other reasons." R. 25. We cannot say that this conclusion is based on any consideration of Plaintiff's diagnosis of POTS and its related symptoms. It is at best unclear, given the structure of the paragraph, if the ALJ is solely referring to Plaintiff's musculoskeletal and mental complaints.

## C. Residual Functional Capacity Determination

When determining an individual's residual functional capacity the ALJ must consider all relevant evidence. Fargnoli, 247 F.3d at 40, citing 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546; Burnett, 220 F.3d at 121. That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others. Fargnoli, 247 F.3d at 40, citing 20 C.F.R. § 404.1545(a).

In light of our review of the medical evidence we conclude that the ALJ did not thoroughly evaluate and weigh the medical evidence. The ALJ's residual functional capacity determination fails to account for Plaintiff's limitation as supported by Dr. Khan's medical records as well as his opinion. In addition, there was not substantial evidence in the record that was inconsistent with or contradicted Dr. Khan's opinion. We therefore conclude that the

vocational expert's assessment of Plaintiff's ability to perform work was based on a flawed hypothetical because it failed to account for all of her limitations.

The United States Court of Appeals for the Third Circuit instructs that a

vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments. A hypothetical question posed to a vocational expert must reflect all of a claimant's impairments.

Burns, 312 F.3d at 123 (citations omitted); see also Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). In response to a hypothetical that included Plaintiff's limitations as supported by Dr. Khan's opinion, the vocational expert responded that there would be no jobs for Plaintiff. R. 63-67. Accordingly, we will find that Plaintiff is disabled.

**D. Substantial Evidence**

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer, 186 F.3d at 427. "Despite the deference due to administrative decisions in disability benefit cases, 'appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence.' " Morales v. Apfel, 225 F.3d at 317, quoting Smith, 637 F.2d at 970.

Reviewing the supporting evidence and the ALJ's reasoning and review of the evidence as it underlies the ALJ's opinion, we find that the ALJ's assignment of "little weight" to Dr. Khan's opinion is not supported by substantial evidence. The body of the ALJ's opinion does not fully address Dr. Khan's treatment notes, and the ALJ fails to point to substantial

contradictory medical evidence. We further find that the ALJ's conclusion that Plaintiff was not fully credible is not supported by substantial evidence.

With regard to determining Plaintiff's residual functional capacity the ALJ did not consider "all relevant evidence." Fargnoli, 247 F.3d at 40, citing 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546; Burnett, 220 F.3d at 121. The ALJ failed to account for the limitations as set forth by Dr. Khan, which was not inconsistent with or contradicted by other substantial evidence. Thus, we conclude that the ALJ's residual functional capacity determination is in error as it is not supported by substantial evidence.

For similar reasons, and for the reasons set forth in our analysis, we also conclude that the ALJ erred in disregarding the vocational expert's response to hypothetical question that contained Plaintiff's limitations. The vocational expert testified that there would be no jobs for a person who had Plaintiff's limitations. Given our evaluation of the evidence, our findings and conclusions, we therefore adopt the vocational expert's response that there are no jobs existing for someone with Plaintiff's limitations and thus she is not able to be employed. Therefore, we find that she is disabled. Accordingly, we will reverse the decision of the Commissioner and remand for an award of benefits.

## V. Conclusion

For the foregoing reasons, and based upon our review of the record as a whole, we hold that the decision of the Commissioner that Plaintiff was not disabled is not supported by substantial evidence in the record. Therefore, we will deny Defendant's motion for summary judgment. In addition, for the above stated reasons, the decision of the Commissioner denying Plaintiff's claim for Disability Insurance Benefits must be reversed. This matter is remanded to the Commissioner for insurance benefits to be calculated and awarded to Plaintiff.

An appropriate order will be entered.

March 31, 2015
Date

Maurice B. Cohill, Jr.
Maurice B. Cohill, Jr.
Senior United States District Court Judge